IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**JORDAN ALEXANDER GREENE**, §
§
Plaintiff, §
§
v. § Civil Action No. 3:06-CV-1624-L
§
**JOE KNIGHT, et al.**, §
§
Defendants. §

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Joe Knight, Richard Hill, Henry Wilkerson and Mike Pierce's Motion for Summary Judgment, filed November 5, 2007. After careful consideration of the motion, response, briefs, appendices, reply, record, and applicable law, the court **grants in part** and **denies in part** Defendants Joe Knight, Richard Hill, Henry Wilkerson and Mike Pierce's Motion for Summary Judgment.

### I. Procedural and Factual Background

Plaintiff Jordan Alexander Greene ("Plaintiff" or "Greene") filed this action pursuant to 42 U.S.C. § 1983 against Defendants Joe Knight ("Knight"), Richard Hill ("Hill"), Henry Wilkerson ("Wilkerson") and Mike Pierce ("Pierce") (collectively, "Defendants") on September 5, 2006. At the time of the incident made the basis of this lawsuit, Defendant Knight was a deputy constable/warrant officer for Hunt County; and Defendants Hill, Wilkerson, and Pierce were environmental enforcement officers for Hunt County. This lawsuit arises out of the entry into Plaintiff's apartment on July 21, 2006, by Defendants Hill, Wilkerson, and Pierce and their brief detention of Plaintiff at his apartment. Plaintiff contends that the entry and brief detention violated

his right to be free from unlawful and unreasonable search and seizure as guaranteed by the Fourth Amendment to the United States Constitution. Defendants contend that the entry into Plaintiff's apartment and his brief detention were lawful and reasonable and that their conduct on the date in question was objectively reasonable.

The court now sets forth the applicable facts on which it relies to decide the pending summary judgment motion. The operative facts are largely undisputed. Any material fact in actual dispute is presented in the light most favorable to Plaintiff Greene. The standard for deciding the summary judgment motion is set forth in the following section.

In July 2006, Hunt County Deputy Constable Knight coordinated a warrant roundup for Hunt County, Texas. In warrant roundups, law enforcement officers from several jurisdictions commonly work together to locate and arrest various individuals with outstanding arrest warrants.

Two of the outstanding warrants included in this warrant roundup were for a "Jordan Patrick Greene." The warrants were for a speeding citation and a failure to appear in court on the speeding citation. The warrants were issued on April 2, 2004. The speeding offense occurred on October 14, 2002, and the failure to appear occurred on April 2, 2004. Through the crime prevention officer for the city of Greenville, Defendant Knight acquired a tenant list of persons residing in apartment complexes in the city of Greenville, and the list disclosed that a "Jordan Greene" was a tenant at the Sayle Garden Apartments in Greenville, Texas. Other than Plaintiff's first and last names matching the first and last names listed in the warrants, Deputy Constable Knight did not have any identifying information (date of birth, social security number, driver's license number, middle name, or middle initial) that the Jordan Greene who lived in the Sayle Garden Apartments could be the same person named in the two outstanding warrants.

Early in the morning on July 21, 2006, Defendant Knight held a briefing with local law enforcement officers regarding the warrant roundup. Defendants Hill, Wilkerson, and Pierce were on the warrant roundup team that was assigned to serve the two outstanding warrants on Jordan Patrick Greene. Defendant Knight was the person responsible for deciding which warrants a team of officers would attempt to serve. He made the decision to send Defendants Hill, Wilkerson, and Pierce to serve the two outstanding warrants for a Jordan Greene at Plaintiff's apartment complex, and provided the address of the apartment complex.

Although Defendant Knight did not see the actual arrest warrants, he checked on the computer, and the computer revealed that the warrants were for a "Jordan *Patrick* Greene" and provided this person's date of birth, driver's license number, and Colleyville, Texas, address. Defendant Knight did not attempt to have the person listed in the warrants served at the Colleyville address. Defendant Knight did not conduct a check with the Texas Department of Public Safety ("DPS") by using the date of birth and driver's license number of the person named in the warrants to attempt to determine his current address. Further, Defendant Knight did not check with the management of the apartment complex to determine whether the "Jordan *Patrick* Greene" in the warrants was the person who lived at the apartment complex.

Based on information provided by Defendant Knight, Defendants Hill, Wilkerson, and Pierce left the briefing and went to the Sayle Garden Apartments to see whether they could locate the Jordan Greene who Defendant Knight believed was the subject of the arrest warrants and serve them. The officers arrived at Plaintiff Greene's apartment around 6:00 a.m. They knocked on the door and announced that they were police officers. Keith Gathright opened the door. According to Gathright, the officers "barged in" and stated that they were there to serve a warrant on Jordan

Greene. Gathright states that he was "half-asleep," and that neither he nor anyone else invited the officers inside the residence. He further states that the officers had their guns drawn.[1]

Defendant Wilkerson remained near the front door of the apartment, and Defendants Hill and Pierce proceeded to the bedroom. Greene states that he was awakened by the officers shouting his name and by their presence in his bedroom. The officers were calling out the name "Jordan Greene" as they approached the bedroom. According to Plaintiff Greene, Defendants Hill and Pierce "barged into [his] bedroom" and pointed their weapons at him for "no more than probably 20 seconds." The weapons were pointed at Plaintiff Greene until he arose from underneath the bed covers and sat on the edge of his bed. The officers "holstered their weapons" once his hands were visible. When the officers entered the bedroom, it was dark, and they used their flashlights until one of them was able to turn on the lights. The officers told Plaintiff Greene that they had warrants for his arrest and that he was going to jail. He inquired about the warrants and stated that he had never been in trouble, and had never received a speeding ticket in Hunt County. Plaintiff Greene told the officers that he was Jordan Alexander Greene and provided them with his date of birth and driver's license. Defendant Pierce made a call on his cell phone, checked the identifying information provided by Plaintiff against that relevant to the warrants, and discovered that the information pertaining to the

---

[1] The officers' version, in some key aspects, contradicts that of Gathright. The three officers' version is that they went to the apartment where a Jordan Greene was supposed to be living, knocked on the door and announced themselves as police officers. After some time, a male answered the door, and the officers identified themselves as police officers and asked the male whether he was Jordan Greene. According to the officers, the male stated that he was not Jordan Greene; and they inquired whether Jordan Greene lived at the residence. At that time, Gathright responded affirmatively, stepped back from the door, and pointed toward a bedroom. The officers stated that their guns were not drawn at anytime during their encounter with Gathright. The court, for purposes of this summary judgment motion, must of course accept Plaintiff Greene's witness's version of the facts if there are conflicting accounts of what transpired.

**Memorandum Opinion and Order - Page 4**

warrants did not match that provided by Plaintiff Greene. Defendants Hill and Pierce apologized to Plaintiff Greene for waking and inconveniencing him and left his apartment.

## II. Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent

summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Qualified Immunity Standard

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official must affirmatively plead the defense of qualified immunity. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Defendants have pleaded this defense.

In deciding a motion for summary judgment that raises the defense of qualified immunity, the court must first decide whether the plaintiff has alleged the violation of a constitutional right and, if so, proceed to determine whether that right was clearly established at the time of the alleged

violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991); *see also Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir. 1999). The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted); *see also Kerr,* 171 F.3d at 339; *Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996). The court uses the three-step approach in resolving the qualified immunity issue.

Once a public official or officer asserts the defense of a qualified immunity and establishes that he is acting within the scope of his discretionary authority, the burden shifts to the plaintiff to rebut this defense by demonstrating that the official's conduct violated clearly established law. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992); *see also Bolton v. City of Dallas*, 472 F.3d 261, 265 (5th Cir. 2006) ("Once a public official has raised the defense of qualified immunity, the burden rests on the plaintiff to rebut it."). For purposes of resolving this motion, since Defendants contend that their conduct was objectively reasonable, Plaintiff Greene must establish that Defendants' conduct was objectively unreasonable.

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not

only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law. *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997).

In *Anderson*, 483 U.S. at 641, the Supreme Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d at 882; *Stefanoff v. Hays County*, 154 F.3d at 525.

## IV. Analysis

### Entry into Plaintiff's Residence

The existence of a facially valid arrest warrant gives a law enforcement officer the limited authority to enter that person's residence and execute the warrant if the officer has "reason to believe" that the person lives at and is inside the residence. *Payton v. New York*, 445 U.S. 573, 603 (1980); *U.S. v. Route*, 104 F.3d 59, 62 (5th Cir. 1997). Defendants Hill, Wilkerson, and Pierce had valid arrest warrants for a Jordan Greene. The question to be decided is whether Defendants Hill, Wilkerson, and Pierce had reason to believe that Jordan Patrick Greene lived at the Sayle Garden Apartments and was inside at the time they executed the warrants. The court concludes that the conduct of Defendants Hill, Wilkerson, and Pierce was objectively reasonable in light of the information known to them at the time they went to serve the warrants.

Defendants Hill, Wilkerson, and Pierce proceeded to and entered Plaintiff's residence based upon information provided by Defendant Knight. That they did not have the actual warrants in their possession is of no moment. In the area of law enforcement, it is no secret that law enforcement officers commonly rely on information provided by other law enforcement officers to perform their duties. Indeed, little would be accomplished in this area without such reliance and interaction. Such reliance is objectively reasonable. *See Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 409-10 (5th Cir. 1989). Moreover, in this case, Plaintiff has produced no evidence that Defendants Hill, Wilkerson, and Pierce were aware of the Colleyville, Texas address as the address for the person named in the warrants, or that the information provided by Defendant Knight was incorrect. No facts were presented to them that would have put them on notice that Plaintiff Greene was not the person named in the warrants or that they were going to the wrong address to attempt to serve the

warrants. Although Plaintiff's residence was the wrong residence, the court concludes that Defendants Hill, Wilkerson, and Pierce's actions in relying on information supplied by Defendant Knight and in attempting to serve the warrants at the address where Plaintiff resided were objectively reasonable. Stated another way, Plaintiff has not shown that the conduct of the three law enforcement officers regarding the entry into Plaintiff's residence was objectively unreasonable. A reasonablely competent law enforcement officer could have believed that the actions of the three officers were lawful in light of the information provided to them by Defendant Knight and existing law. At minimum, officers of "reasonable competence could disagree" whether the conduct of the three officers was lawful. Accordingly, "immunity should be recognized" under such circumstances. *Malley*, 475 U.S. at 341. As their conduct was objectively reasonable, Defendants Hill, Wilkerson, and Pierce are entitled to summary judgment with respect to the entry into Plaintiff Greene's apartment.

### B. Officers' Encounter with Plaintiff

Plaintiff further contends that he was terrorized at gunpoint and that such terror amounted to a search and seizure conducted in an objectively unreasonable manner in violation of the Fourth Amendment. The court disagrees.

Plaintiff complains about the detention and weapons being drawn and pointed at him. After the three officers entered Plaintiff's residence, two proceeded to his bedroom. The officers pointed their guns at Plaintiff Greene for, at most, twenty seconds. The officers were at Plaintiff's residence to attempt to serve two warrants, and he was briefly detained during the process. As previously described, the officers, upon verifying key identifying information, discovered that Plaintiff Greene was not the person named in the warrants. The officers apologized and left Plaintiff's apartment.

All of this lasted only a few minutes. A brief detention as set forth under the circumstances herein simply does not violate the Fourth Amendment to the United States Constitution.

With respect to Plaintiff's argument about the reasonableness of the seizure, that is, the officers pointing their guns at him, the court finds it unavailing. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id*. at 397. Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id*. at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) an injury (2) which resulted directed and only from the use of force that was clearly excessive to the need (3) and the force used was objectively unreasonable." *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) (citation omitted); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000); *Williams v. Bramer*, 180 F.3d 699, 703-04 (5th Cir. 1999); *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996); *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993); *Knight v. Caldwell*, 970

F.2d 1430, 1432-33 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993). Injury means damage or harm to the physical structure of the body, including diseases that naturally result from the harm. *Knight*, 970 F.2d at 1433.

Plaintiff fails to establish, or raise a genuine issue of material fact, that all elements of the three-part test have been met. Assuming without deciding that Plaintiff suffered a psychological injury, he does not satisfy the other two elements. Defendants Hill and Pierce were attempting to serve two warrants. Serving a warrant can quickly escalate into a dangerous situation for the officer and the person to be served, and this is true whether an officer is serving a misdemeanor or felony warrant. The officer does not know what to expect; the person to be served may readily comply with the officer's instructions, flee, resist and fight, or use deadly force against the officer. In essence, in any police situation, especially one that is tense, an officer has to be vigilant and prepared for how a person may react. Plaintiff was asleep when Defendants Hill and Pierce entered into his bedroom; he was under the bed covers, and the officers could not see his hands. Some persons sleep with a gun under a pillow, underneath the mattress, in the bed, on a nightstand, or in some other place in close proximity to the bed. These are locations from which a gun can be readily retrieved and fired in a few seconds or less.[2]

As the officers could not see Plaintiff Greene's hands under the cover, the court determines that the officers pointing their service weapons at Plaintiff Greene for no more than twenty seconds until he sat on the side of his bed and revealed his hands was not a use of force that was clearly excessive to the need. The officers did not know whether Plaintiff had a weapon, and although

---

[2]A person has an absolute right to possess a firearm in his or her home unless that person is a convicted felon or legally prohibited for some other reason for possessing such firearm; that right, however, does not trump the right of a law enforcement officer to take precautionary steps to protect and ensure his safety and that of others during a situation as herein described.

**Memorandum Opinion and Order - Page 12**

pointing their service weapons at him may seem excessive and unreasonable now, the court concludes that such act, as a matter of law, was not objectively unreasonable under the circumstances with which the officers were faced.

### C. Defendant Knight

Defendant Knight contends that he is entitled to qualified immunity because his conduct that resulted in Plaintiff being briefly detained was objectively reasonable. For the reasons herein stated, the court disagrees.

As Defendant Knight was responsible for sending Defendants Hill, Wilkerson, and Pierce to Plaintiff Greene's apartment to execute the warrants in question, the court focuses on the facts relevant to Defendant Knight's determination that Plaintiff's address was the likely location where "Jordan Patrick Greene" could be located. In support of his determination, Defendant Knight provides the following:

> Through my training in obtaining my license as a Peace Officer, my continuing education, and my job on the job experience, I am familiar with the process of obtaining intelligence for the purpose of serving outstanding arrest warrants in a county such as Hunt County. By virtue of my training and experience, I know that many people who are the subject of warrants either (1) give false or outdated addresses during the traffic stop or other incident forming the basis of the warrant; (2) move between the date of the underlying incident and the date they are eventually arrested on the warrant; and/or (3) do not keep the address information on their driver's license current. Therefore, many times, the use of more current intelligence data is the preferred starting point for identifying likely current addresses for people who are the subject of warrants. This is particularly true when a significant period of time has passed between the date of the underlying incident and the date of the warrant round-up. One of the pieces of intelligence data that I regularly rely upon is lists of tenants residing in various apartment complexes in the city of Greenville, Texas. I have been using these tenant lists to assist me in locating persons upon whom arrest warrants need to be served for much of the past five years. The use of these tenant lists has assisted me in locating at least somewhere between 40-50 persons who have outstanding warrants. In my experience, it has been very uncommon for the person residing at the address given on the tenant list to not be the person with the outstanding warrant. However, due to the fact that some names such

as "John Smith" are relatively common names, I do not utilize the tenant list for locating persons with such names.

Defendants' App. 2-3, Affidavit of Joe Knight ¶ 3.

While the court does not necessarily disagree with the overall general assertions made in the three numbered statements of Defendant Knight's affidavit, it determines that they exaggerate the relevant statistics and cannot be applied across-the-board. First, the words "many people" are meaningless, not placed in proper context, and cause one to make unreasonable assumptions and inferences. Second, believing what he set forth, Defendant Knight at a minimum should have taken steps to obtain specific identifying information to determine the address of "Jordan Patrick Greene," the person named in the warrants. Rather than even attempt to verify the address listed in the warrants, Defendant Knight assumed that it was no longer a valid address. Moreover, Defendant Knight did not check with the DPS to see whether it was still valid. Given the mobile nature of our society, the longer the passage of time between the date of citation and the date of execution of a warrant, the more important it becomes to verify the accuracy of key information pertaining to the person named in a warrant. Further, the court does not find the tenant list to be a reliable source, unless a date of birth, driver's license number, social security number, or other specific identifying information is provided. For example, if the tenant list had contained Plaintiff's middle name "Alexander" or the initial "A," it would have been quite helpful. Without such specific information, a tenant's list is only a start, not a means to identify a person named in a warrant. In this case, the information provided by the tenant list was merely the name "Jordan Greene," which Defendant Knight describes as "relatively uncommon." The court cannot assume that the name "Jordan Greene" is "relatively uncommon." While the name is certainly not as common as "John Smith" or "Robert Brown," and the surname "Green" is certainly more common than the surname "Greene,"

**Memorandum Opinion and Order - Page 14**

this does make the name "Jordan Greene" relatively uncommon. The court cannot say that Defendant Knight's conduct was objectively reasonable under the circumstances of this case.

The court's holding is consistent with the Fifth Circuit's decision in *Johnson v. Deep East Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293 (5th Cir. 2004). In *Johnson*, a deputy sheriff provided the information in "bust-out" packages for a task force to execute warrants against several suspects. The deputy sheriff relied on jail records and offense reports for a particular suspect's address, 419 Otis Street. The record reflects that the suspect actually gave this location as his address when he was arrested earlier on another charge nine months before the warrant roundup. On March 9, 2001, when the task force officers attempted to serve the warrant, the suspect did not live at the location provided by the deputy sheriff; a 67 year-old lady resided at the Otis Street address. The task force officers entered this residence, detained the 67 year-old lady, and searched the house for the wanted person who, unbeknownst to the officers, no longer lived there. Moreover, on March 9, 2001, there was no evidence that records of the jail or Sheriff's Department listed, or even suggested, any address for the suspect other than that on Otis Street where the 67 year-old lady resided. The court held that under these facts it was objectively reasonable for the deputy sheriff to rely on these records, and he was therefore entitled to qualified immunity. *Id*. at 302-04.

In *Johnson*, the suspect, by his own admission, *had* lived at the wrongfully searched residence as late as July 2000. In this case, Defendant Knight had no evidence that Jordan Patrick Greene had ever lived at the Sayle Garden Apartments. He did know that Jordan Patrick Greene, based on the last known address, lived at the Colleyville address, yet he did nothing to check the status of this information.

Plaintiff Greene has carried his burden as to Defendant Knight's conduct. Given the totality of the circumstances surrounding Defendant Knight's conduct in directing Defendants Hill, Wilkerson, and Pierce to the Sayle Garden Apartments, the court cannot conclude that he is entitled to qualified immunity. His conduct requires further explanation and facts before the court can conclude that it was not objectively unreasonable. At this juncture, the court cannot determine that officers of reasonable competence could differ on the lawfulness of Defendant Knight's conduct in directing Defendants Hill, Wilkerson, and Pierce to execute the warrants at Plaintiff Greene's residence. As genuine issues of material fact remain regarding Defendant Knight's conduct, summary judgment is not appropriate. Defendant Knight may ultimately prevail on this issue; however, it is to be resolved by a jury, not the court. The three officers would have never gone to Plaintiff Greene's residence to execute a warrant but for Defendant Knight's conduct and his instructions.

## V. Conclusion

For the reasons stated herein, the court determines that no genuine issue of material fact exists as to the objective reasonableness of the conduct of Defendants Hill, Wilkerson, and Pierce. The court determines that a genuine issue of material fact exists with respect to whether Defendant Knight's conduct was objectively reasonable. Accordingly, the court **grants** Defendants Joe Knight, Richard Hill, Henry Wilkerson and Mike Pierce's Motion for Summary Judgment as to Defendants Hill, Wilkerson, and Pierce, and **denies** the motion as to Defendant Knight. Plaintiff's claims against Defendants Hill, Wilkerson, and Pierce are **dismissed with prejudice**. Plaintiff's claims against Defendant Knight will proceed to trial unless earlier resolved.

**VI. Pretrial Conference**

**A pretrial conference is scheduled for Friday, February 1, 2008, at 3:00 p.m. To avoid unnecessary expense to the parties and counsel, the court will conduct the pretrial conference telephonically. Plaintiff's counsel is responsible for setting up the conference call to the court.**

**It is so ordered** this 29th day of January, 2008.

*/s/ Sam A. Lindsay*
Sam A. Lindsay
United States District Judge